MICHAEL M. VASSEGHI (SBN 210737)
michael.vasseghi@roll.com
KATE SPELMAN (SBN 269109)
kate.spelman@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:  (310) 966-8400
Facsimile:   (310) 966-8810

Attorneys for Plaintiffs
The Wonderful Company LLC and
Wonderful Pistachios & Almonds LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| THE WONDERFUL COMPANY LLC and WONDERFUL PISTACHIOS & ALMONDS LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>YUMTEE NATURALS LTD., d/b/a Farm Fresh Nuts, a New York domestic business corporation, , and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**FEDERAL TRADEMARK INFRINGEMENT;**<br><br>**VIOLATION OF THE LANHAM ACT SECTION 43(a);**<br><br>**UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 ET SEQ.**<br><br>**DEMAND FOR TRIAL BY JURY** |

{2905667.1}

1

COMPLAINT

Plaintiffs The Wonderful Company LLC and Wonderful Pistachios & Almonds LLC, hereby allege as follows:

## PARTIES

1. The Wonderful Company LLC is the owner of the trademark at issue in this case.

2. Plaintiff Wonderful Pistachios & Almonds LLC and its affiliates grow, package, market and distribute the famous WONDERFUL® brand of pistachio and almond nuts throughout the United States, using the trademark at issue in this case under license from The Wonderful Company LLC.

3. The Wonderful Company LLC and Wonderful Pistachios & Almonds LLC are collectively referred to herein as "WPA."

4. Defendant Yumtee Naturals Ltd., d/b/a Farm Fresh Nuts, ("Yumtee") is a New York domestic business corporation located at 134 South 9th Street, 2D, Brooklyn, NY 11211.

5. WPA is not aware of the true names and capacities of the Defendants identified herein as Does 1 through 10, inclusive, and therefore fictitiously names said Defendants. WPA will amend this Complaint to allege the true names and capacities of these fictitiously named Defendants when their identities are ascertained.

6. WPA is informed and believes, and based thereon alleges, that Defendant Yumtee and each of the fictitiously named Doe Defendants (collectively, "Defendants") were in some manner responsible for the acts alleged herein and the harm, losses and damages suffered by WPA as alleged hereinafter. WPA is also informed and believes, and based thereon alleges, that while participating in such acts, each Defendant was the agent, principal, and/or alter ego of the other Defendants, and was acting in the course and scope of such agency and/or acted with the permission, consent, authorization or ratification of the other Defendants.

## JURISDICTION AND VENUE

7. This action arises, in part, under the Lanham Act, as amended; California Business and Professions Code Section 17200 and 17500 et seq.; and California common law. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 (federal question), 15 U.S.C. Section 1051, et seq. (trademark infringement under the Lanham Act), 28 U.S.C. Section 1338 (unfair competition related to trademark claims) and 28 U.S.C. Section 1367 (supplemental jurisdiction).

8. On information and belief, Yumtee is engaged in the packaging and distribution of its unbranded pistachio product sold in California, including in this District.

9. WPA is informed and believes, and based thereon alleges, that venue is proper in this District pursuant to 28 U.S.C. Sections 139l(b) and 139l(c) because a substantial part of the events and harm giving rise to the claims occurred in this District. Additionally, WPA is informed and believes, and based thereon alleges, that the Court has personal jurisdiction over Defendants because Defendants conduct their ordinary business activities in this District, have focused a substantial portion of their unlawful conduct within this District, have distributed and sold and sought to distribute and sell infringing products in this District, and generally engage in business in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**I.  THE WONDERFUL® BRAND OF NUTS AND THE GET CRACKIN'® TRADEMARK**

10. WPA is the largest pistachio processor and pistachio seller in the world. WPA also processes and sells almonds. WPA grows, harvests, processes, packages, ships, markets, sells, and distributes pistachio and almond nuts in the United States in connection with its highly distinctive and famous WONDERFUL® brand.

11. WPA has been growing, processing, selling, and marketing WONDERFUL® brand nuts since May 2007.

12. WPA has been the key player in creating consumer demand for pistachios in the United States.

13. The WONDERFUL® brand nuts are of superior quality and are brought to consumers using growing, harvesting, processing, and packaging processes which adhere to the strictest and highest quality standards. WPA has invested more than $100 million to ensure that its processing facilities consistently produce the highest quality pistachios and almonds anywhere.

14. WPA has invested over $200 million dollars building the WONDERFUL® brand for its high quality pistachio and almond nut products and its registered GET CRACKIN' trademark, U.S. Registration Number 3842741 (the "GET CRACKIN'® trademark"), has been the cornerstone of its advertising for over 9 years with extensive use of the GET CRACKIN' trademark in television commercials, print ads, point-of-sale materials and many other advertising materials.

15. In September 2009, WPA embarked on a highly-publicized series of television commercials on major television networks such as NBC, CBS, ABC, FOX, A&E, Biography, Comedy Central, Discovery, Discovery Science, E!, Food Network, FX, HGTV, IFC, National Geographic, SYFY, TBS, TLC, TNT and ESPN for the WONDERFUL® brand of pistachios ("2009 Ad Campaign"). Commercials on these channels were shown during prime time slots during highly popular television shows and featured well-known personalities known to consumers such as Vincent Pastore from The Sopranos, Levi Johnston, Lauren Caitlin Upton aka Miss Teen South Carolina, Jason Acuna aka Wee-Man, and Dara Torres, a 2008 Beijing Olympics silver medalist.

16. In September 2010, WPA launched its second series of television commercials. The 2010 Ad Campaign commercials aired on similar networks, at similar time slots and during similar prime time television shows as the 2009 Ad

Campaign, and featured well-known personalities such as former Illinois governor Rod Blagojevich, television character "Snooki" from the popular reality show Jersey Shore, football star Chad Ocho Cinco and comic Lewis Black. The 2010 Ad Campaign alone resulted in approximately 137 million consumer impressions.

17. In 2011, WPA launched a $30 million advertising campaign which included more television commercials. As in previous years, the 2011 Ad Campaign commercials aired on major networks during prime time television shows and featured well-known personalities such as then Lakers basketball player Lamar Odom and his then-wife Khloe Kardashian, Kermit the Frog, and "Facebook twins" and Olympians Cameron and Tyler Winkelvoss.

18. In September 2012, WPA launched its fourth season of television commercials on major networks featuring talent from the world of music, sports, social media and technology. The $30 million advertising campaign debuted during prime time television on shows such as "Survivor" and "X Factor."

19. In September 2013, WPA launched its fifth season of television commercials launching five new television commercial spots that featured such personalities as King Kong, Dennis Rodman, and the Prancercise Lady. The spots have also been viewed hundreds of thousands of times on YouTube. For the 2013 Super Bowl, international pop sensation, PSY, starred in WPA's first ever Super Bowl spot.

20. For the 2014 Super Bowl, WPA introduced Comedy Central mainstay Stephen Colbert as the new spokesperson for WPA's "Get Crackin' America" campaign. The quirky Colbert is one of the nation's leading political satirists and former host of the Emmy Award-winning comedy show "The Colbert Report" and current host of the "Late Show."  During 2014, WPA ran ten different commercials starring Stephen Colbert.  GET CRACKIN' was the theme of this advertising campaign which continued until the 2015 Super Bowl.  Each commercial ended with a voice over saying "GET CRACKIN'"


21.     WPA has had numerous other television campaigns between 2015 and the present involving various characters, including Plaintiffs' made up character Ernie the Elephant.  The commercials involving Ernie the Elephant, the mark GET CRACKIN' was prominently written on the screen at the end of each commercial.

22.     Because nuts are considered a "fast moving" consumer good and because of their wide distribution and relatively low cost, consumers are likely to make purchases of pistachio and almond nuts quickly.  It is for this reason that WPA has spent such a considerable sum of money developing the GET CRACKIN'® mark and the WONDERFUL® brand.

23.     The GET CRACKIN'® mark is used uniformly and consistently in the majority of the WONDERFUL® brand products, advertisements, and promotions in commerce in connection with WPA's pistachios.

24.     GET CRACKIN'® is such a central component of the WONDERFUL® brand that Plaintiffs use the URL www.getcrackin.com as their primary website to promote their WONDERFUL® brand of pistachios.  A search on the search engine, Google for "WONDERFUL PISTACHIOS" gives www.getcrackin.com as the first result.

25.     WPA, its authorized distributors, and its distributors' customers, have continuously and exclusively used the GET CRACKIN'® mark to distinguish themselves as the source of goods and services in connection therewith.

26.     WPA has been careful, skillful, and diligent in conducting its nut business and maintaining uniform standards of high quality in its goods and services. As a result of these efforts, the WONDERFUL® brand and the GET CRACKIN'® mark have acquired a public acceptance and reputation, thereby creating a valuable public goodwill that inures to WPA's benefit.

27.     To date, WPA has expended tens of millions of dollars in the United States alone on the marketing, advertising, sales, and promotion of its WONDERFUL® brand, using GET CRACKIN'® as a focus for its marketing, and

1  making WPA one of the leaders in the nut industry.

2      28.    As a result of WPA's extensive marketing, sales, and promotional

3  efforts, the WONDERFUL® brand is now one of the best-selling nut products in the

4  United States. WPA has sold over hundreds of millions of pounds of

5  WONDERFUL® pistachios and almonds since the brand launched in the United

6  States in May 2007.

7  **II.    YUMTEE INFRINGING PRODUCTS AND ITS INTENT TO COPY WPA'S WONDERFUL® BLACK TRADE DRESS**

8

9      29.    Yumtee is a New York-based seller of packaged pistachios.  As such,

10  Yumtee is a direct competitor of WPA and is aware of WPA and its trademarks.

11      30.    Yumtee has consturctive notice of WPA's rights in the GET

12  CRACKIN'® trademark due to WPA's trademark registration, which dates back to

13  August 31, 2010.

14      31.    Yumtee was given actual notice of WPA's rights when it received

15  WPA's September 7, 2018, letter advising it of WPA's rights.

16      32.    Yumtee's packaging for its nuts prominently feature "GET

17  CRACKING" on the lower right hand portion of the packaging (the "Yumtee

18  Product").  The name "Farm Fresh Nuts" appears below the use of "GET

19  CRACKING" making it less prominent.

20      33.    WPA is informed and believes, and based thereon alleges, that Yumtee

21  uses "GET CRACKING" so as to cause a likelihood of confusion between the

22  Yumtee Product and WPA's product, or to cause mistake, or to deceive the relevant

23  public that Yumtee's pistachios are authorized, sponsored or approved by or are

24  affiliated with WPA and the WONDERFUL® brand.

25      34.    WPA is further informed and believes, and based thereon alleges, that

26  by willfully misappropriating a slightly modified version of the GET CRACKIN'®

27  mark, Yumtee is causing customer confusion in the marketplace.

28

35. WPA is further informed and believes, and based thereon alleges, that the Yumtee product is similar to WPA's nut products (except, perhaps, in quality), and is being sold in the same trade channels (currently, specifically on Amazon.com) to identical classes of consumers who purchase edible nuts with an identical level of sophistication and impulsivity.

36. WPA is further informed and believes, and based thereon alleges, the natural, probable and foreseeable result of Yumtee's intentional, willful and wrongful conduct has been to deprive WPA of business and goodwill, and to injure WPA's relationships with existing and prospective customers.

37. WPA is further informed and believes, and based thereon alleges, that Yumtee's infringement of the GET CRACKIN'® mark causes a likelihood of confusion and actual confusion with WPA's WONDERFUL® brand.

38. WPA is further informed and believes, and based thereon alleges, that it has lost and will lose revenues as a result of Yumtee's wrongful conduct in producing, marketing, and selling the infringing Yumtee Product.

39. WPA is further informed and believes, and based thereon alleges, that Yumtee has been unjustly enriched by the production, sale, and marketing of the infringing Yumtee Product.

## FIRST CLAIM FOR RELIEF

(Trademark Infringement Pursuant to 15 U.S.C. § 1114(a))

40. WPA incorporates Paragraphs 1 through 39 above as though set forth fully herein.

41. Defendants' Yumtee Product which packaging contains GET CRACKING infringes the GET CRACKIN'® mark because its use as part of the product's name is likely to cause confusion, mistake, and deception with respect to the GET CRACKIN'® mark.

42. Defendants' imitation, copying, and unauthorized use in commerce of Plaintiffs' federally registered trademark is likely to cause confusion, mistake, or to

deceive the consuming public and trade by creating the erroneous impression that Defendants' products have been manufactured, approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with WP&A.

43. The imitation, copying, and unauthorized use of the GET CRACKIN'® mark causes irreparable injury to WP&A, including injury to its business reputation and the goodwill associated with the GET CRACKIN'® mark.

44. By reason of the foregoing, Defendants have infringed WP&A's trademark and have violated, and are continuing to violate, 15 U.S.C. Section 1114.

45. WP&A has no adequate remedy at law for these injuries. Moreover, unless Defendants are restrained by this Court from continuing this imitation, copying and unauthorized use of the GET CRACKIN'® mark, these injuries will continue to occur. WP&A is entitled to an injunction restraining Defendants, their officers, agents, distributors and employees, and all persons acting in concert with them, from engaging in such further acts in violation of 15 U.S.C. Section 1116.

46. By reason of Defendants' willful acts of trademark infringement, WP&A is entitled to damages it has sustained and will sustain, and to have those damages trebled pursuant to 15 U.S.C. Section 1117.

47. This is an exceptional case making WP&A eligible for an award of attorneys' fees under 15 U.S.C. Section 1117.

48. WP&A is further entitled to recover from Defendants any gains, profits and advantages unfairly obtained by Defendants as a result of their acts of infringement alleged herein. At present, the amount of any gains, profits and advantages cannot be fully ascertained by WP&A. WP&A is unable to ascertain the full extent of the monetary damages suffered by reason of Defendants' acts at this time.

49. Yumtee has caused WPA to suffer monetary damages in an amount to be proven at trial.

50. WPA is further entitled to recover Yumtee's profits attributable to the infringement.

51. Because of the willful nature of Yumtee's acts, WPA is entitled to treble damages pursuant to 15 U.S.C. Section 1117.

52. WPA is entitled to an award of its attorneys' fees pursuant to 15 U.S.C. Section 1117 because this is an exceptional case.

## SECOND CLAIM FOR RELIEF

(Trademark Infringement Pursuant to 15 U.S.C. Section 1125(a))

53. WPA incorporates by reference Paragraphs 1 through 52 above as though fully set forth herein.

54. Defendants' infringing product infringes the GET CRACKIN'® mark, and Defendants are falsely designating the origin of their brand because the use of the GET CRACKING® mark as part of their product's name is likely to cause confusion, mistake, and deception with respect to the GET CRACKIN'® mark.

55. Defendants' use of WP&A as part of its product name has confused and is likely to continue to cause confusion or to cause mistake, or to deceive the consuming public into believing that Defendants' goods or services are authorized, sponsored or approved by or are affiliated with WP&A.

56. These acts constitute trademark infringement of the GET CRACKIN'® mark and false designation of origin in violation of 15 U.S.C. Section 1125(a), entitling WP&A to relief.

57. By reason of Defendants' acts, WP&A is, and will continue to be, irreparably harmed if Defendants' conduct is not enjoined. WP&A's remedy at law is not adequate to compensate it for the injuries inflicted, and WP&A is therefore entitled to injunctive relief pursuant to 15 U.S.C. Section 1116.

58. The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake and deception.

59. Defendants have unfairly profited from the actions alleged and WP&A is therefore entitled to recover from Defendants the damages sustained as a result of Defendants' acts in violation of 15 U.S.C. Section 1125(a). At present, WP&A is unable to ascertain the full extent of the monetary damages suffered by reason of Defendants' acts.

60. Further, because of the willful nature of Defendants' acts, WP&A is entitled to damages and to have those damages trebled pursuant to 15 U.S.C. Section 1117.

61. This is an exceptional case making WP&A eligible for an award of attorneys' fees pursuant to 15 U.S.C. Section 1117.

## THIRD CLAIM FOR RELIEF

(Violation of California Unfair Competition Pursuant to Cal. Bus. & Prof. Code Sections 17200 and 17500 et seq.)

62. WPA incorporates by reference Paragraphs 1 through 61 above as though fully set forth herein.

63. Defendants sells its product in direct competition with WPA.

64. Defendants' willful, knowing and unauthorized use of GET CRACKING on packaging in connection with its pistachio product is causing confusion as to the source of the goods and is causing harm to WPA's goodwill. Defendants' infringing use constitutes an unlawful appropriation of WPA's exclusive rights in the GET CRACKIN'® mark.

65. By selling its goods using infringing promotional material, Defendants are in violation of WPA's proprietary rights, thereby constituting unfair competition as such acts constitute unlawful, unfair, deceptive and/or fraudulent trade practices and unfair competition in violation of California Business & Professions Code Sections 17200 and 17500 et seq.

66. As a direct and proximate result of Defendants' wrongful conduct, WPA has suffered injury in fact, which includes a loss of sales, damage to WPA's

goodwill with its existing, former and potential customers, and actual confusion between the infringing pistachio product and WPA's products and advertising.

67. The harm these wrongful acts will cause to WPA is imminent and irreparable. As such, WPA has no adequate remedy at law.

68. Pursuant to California Business & Professions Code Section 17203, Defendants are required to disgorge and restore to WPA all profits and property acquired by means of Defendants' unfair competition with WPA.

69. Pursuant to California Business & Professions Code Section 17203, WPA is entitled to a preliminary and permanent injunction restraining Defendants, its respective officers, agents, employees, distributors and all persons acting in concert with them, from engaging in further such unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. That the Court enter judgment against each Defendant that:

   a. Defendants infringed Plaintiffs' rights in the GET CRACKIN'® mark in violation of 15 U.S.C. Sections 1125(a) and 1114; and

   b. Defendants engaged in unfair competition and deceptive acts and practices in violation of California Business & Professions Code Sections 17200 and 17500 et seq.

2. That the Court enter judgment against each Defendant that the above acts were willful and intentional making this an exceptional case.

3. That the Court issue a preliminary and permanent injunction enjoining and restraining Defendants and their agents, servants, employees, successors, assigns and all other persons acting in concert or in conspiracy with or affiliated with any Defendants from:

   a. Engaging in any infringing activity including advertising, promoting, marketing, franchising, distributing, selling, and offering for sale, any goods or services in connection with the infringing mark identified herein or

any trademark confusingly similar to WPA's GET CRACKIN'® mark ; and

    b.    Requiring Defendants to deliver up to Plaintiffs for destruction any and all packaging, advertising and promotional materials in Defendants' possession, custody or control, which infringe on the GET CRACKIN'® mark.

4.    That Plaintiffs be awarded damages resulting from Defendants' infringement in accordance with the provisions of 15 U.S.C. Section 1117.

5.    That damages resulting from Defendants' infringement and unfair competition under the Lanham Act be trebled due to Defendants' willfulness, in accordance with the provisions of 15 U.S.C. Section 1117.

6.    That Plaintiffs be awarded all profits and monies resulting from Defendants' infringement of Plaintiffs' rights and by means of Defendants' unfair competition with Plaintiffs.

7.    That Plaintiffs be awarded an amount sufficient to reimburse Plaintiffs for the costs of corrective advertising.

8.    For pre-judgment interest on all infringement and other appropriate damages.

9.    That the Court finds this case to be exceptional and awards Plaintiffs their reasonable attorney fees pursuant to 15 U.S.C. Section 1117 and any other applicable provision of law.

10.    That the Court awards Plaintiffs their costs of suit incurred herein.

11.    For such other or further relief as the Court may deem just and proper.

DATED: January 18, 2019    ROLL LAW GROUP PC

By:    /s/ Michael M. Vasseghi
Michael M. Vasseghi
Attorneys for Plaintiffs
The Wonderful Company LLC, Wonderful Pistachios & Almonds LLC

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial in connection with this action.

DATED:  January 18, 2019          ROLL LAW GROUP PC


                                  By:      /s/ Michael M. Vasseghi
                                       Michael M. Vasseghi
                                       Attorneys for Plaintiffs
                                       The Wonderful Company LLC, Wonderful
                                       Pistachios & Almonds LLC